May it please the Court, Michael Mayock on behalf of Appellant Rodriguez. This is a case that I'm sure the Court is well aware of. It comes before the Court in a posture involving a conspiracy charge of a Hobbs Act violation where the government agents created a non-existent individual or two, non-existent drugs, in this case cocaine, in order to get several individuals to participate in a conspiracy to violate the law. The United States attorney hasn't given any real limiting principle on where you can draw the line on a Hobbs Act violation charge that limits in some way the ambit of law enforcement to some reasonable kind of conduct. This is not reasonable. What happened in this case? What do you mean when you say this is not reasonable? It wasn't reasonable for them to find some people with preexisting intent to do this and give them an opportunity? Or it wasn't reasonable to bring it in Federal court? What do you mean by this? Both, actually. It shouldn't be. This really is a case that if it were to be filed, ought to be filed in the State. I think the Supreme Court made it relevant to all courts or aware to all courts that when you have a situation involving an individual who commits a crime like robbery, where it appears to be a personal and not something that is interstate, but in any event, a crime of violence, the States are the ones that should be regulating that kind of conduct and not the Federal government. It doesn't make any difference whether I was with you or not, but I was following your argument pretty closely until I read Judge Posner's decision in Marrero, and then overlaid onto that the ordinary conspiracy law doctrine that says it doesn't make any difference whether these were fake victims or not. Was Posner right or wrong? I believe it's wrong, Your Honor. And the reason is Let me ask you a question. We know that a conspiracy to murder a dead person can still be a conspiracy, correct? That's correct. How do you distinguish the cases that say conspiracy to commit an impossible crime is different from conspiracy to affect interstate commerce with non-existent merchandise? Isn't that your point? I understand exactly where the Court's coming from. You can conspire to commit a non-existent crime or a crime that's not possible. But when you look at the principles that were enunciated, let's look at the Lynch case that the circuit decided. Those principles would be, I think, of benefit in looking at the three prongs or whether the planned robbery from a person was directly and customarily engaged in interstate or foreign commerce. Yeah, but this was at least purportedly a business. It wasn't an individual. It was a business in this case. Well, it wasn't. If you look at the plea agreement, and that says nothing about it being a business. It talks about narcotic traffickers. It could be anyone who has drugs. That's not a business? Narcotics traffickers? Well, they deal in you don't know what they're dealing on a regular. I would assume a business has some sense of regularity, that it's going to be an operation that has some sort of consistency to it. Somebody could be a trafficker on a one-time deal. They could. But so can commerce be on a one-time deal. It can be. But it's not really a business if it's a one-time. The question is, what does the word business mean? That's another problem. One would think that the average intelligent person would take a look at a business and say, this is something like a shopping mall. So it's a business.   It's an illegal act. But illegal businesses, we've already crossed that line a long time ago. So so what? It's illegal. It's still a business. It's an illegal act. Still a business. It could be a business. Yes. And the highest nature is interstate because cocaine comes in from other countries. You can notice in the plea agreement that was the one excise portion where it was not stipulated to that. In fact, I've got that a lot of cases that say that all cocaine comes from outside the country. Marrero struck out and therefore affects foreign commerce. The a government witness would testify that all cocaine in the United States is imported from outside the country. That's not struck stricken. That's not part. That's not stricken. But and therefore affects foreign commerce. The next portion of that is taken out. Yeah, but that's that's just a therefore imported from outside the country. So we know that the cocaine involved in this case is imported from outside the country. That's that's that's what was stated that a witness would so testify. So it's foreign commerce. Whether an individual would know that or whether for purposes of this, I suppose you could say that it came in from a foreign country. Although there's really nothing that allows someone to make that draw that conclusion. Coca could have been grown in some mountains in California for all we know. But that was a stipulation that was contained in the plea agreement. The marijuana. Obviously, there are cases in, I think, in the circuit that say marijuana would not have been covered. It would not have been. Yeah, but just as in the last case, this isn't marijuana. It's cocaine. I understand that your honor. The question I have, and frankly, I don't know the answer to perhaps you can help me. One thing is a conspiracy to commit an inexistent crime and a conspiracy to deal cocaine. Right. The other thing is one step further. The conspiracy to commit an inexistent crime, which affects inexistent interstate commerce. So we have to an existence and existent crime. And as a jurisdictional requirement, it's got to be a conspiracy to commit a crime and affect interstate commerce. Do we have any cases where inexistent commerce was affected? Not that I'm aware of. The cases that were cited in the briefs talked about situations where individuals were robbing drug traffickers by traveling from one state to another in order to complete that act. Here we have something where there's really nothing that we know there really was no interstate commerce. We know there were no individuals. We know there were no drugs. We know there was no business. We know that there was nothing other than a thought in agents' mind that this is what they would do. In looking at the circuit decision in Davis, which the circuit said a statute is unconstitutionally vague, and I guess we're looking at it as applied. If it does not define conduct, it prohibits with sufficient definitiveness. Clearly, you have to look at this and say this is a problem with something that is just completely manufactured. Because what could, if anyone could manufacture any crime, what this, an affirmance in this case, would basically allow is any agents to create any crime to manufacture a Federal case out of whole cloth and air in order to prosecute in the Federal system cases which could be conceivably prosecuted in the state of California. Well, you know, as a general principle, you could create a scenario exactly like this with terrorists. The FBI sets up a phony trap for terrorists and catches a whole bunch of people before they blow up the Capitol. And your argument would be, well, there's nothing there because there wasn't anything there. That's the whole point of these laws about conspiracies and other things. You know, if you're, because what that does is it's not just some idle picnic on the part of the FBI, but it stops terrorists from really blowing up something. And here what the law enforcement did was stop a bunch of thugs from maybe killing somebody else. Now, here what happened is the, there was a foreman working with some agents who found an individual who then went out and recruited individuals, including my client, to participate in this bogus act. Well, no preexisting criminal predisposition or intent or anything like that, then you'd have a case of entrapment. We don't want the government doing that. But if somebody was sitting around predisposed to do this, then it's perfectly OK for the government to stop it right now rather than allowing this to continue for all time, killing people right and left who may not be government agents, who may really be involved in the business. Usually there has to be some sort of a predicate act that's indicative of the fact that there's... We're not alleging there was entrapment. So these people were predisposed to do this kind of stuff. So what's the matter with the government stepping in and stopping them from continuing to do this kind of stuff? My client had previous convictions, but not for anything involving drugs and not involving anything involving violent acts like robbery. Yeah. But again, if he was entrapped, that's fine. He's off the hook completely. But if he wasn't entrapped, then he's a sitting duck for a government putting an end to this nonsense right now. But your argument is the government that should put an end to this nonsense right now, to use my colleague's phrase, should be the state government because it has no interstate connection, because there's no interstate commerce to begin with. That's right. And in fact, you'd even look at this and say there's no effect on the commerce stream, even with the robbery of drugs, because you clearly those would just continue on. That happens day in and day out in that business. People are stealing drugs and they continue on in the commerce stream. So there's no effect on commerce either. Thank you. What's your point on the choice by the government to use the word interfere with commerce than choose one of the words in the statute? As was suggested in the brief, that is not quite the same as the actual statutory language in 1951, that that language is expressed and should have been expressed. But it's not. Cedrone did say interferes in the Supreme Court opinion on that. So that was used. But it's not in quoting the actual language in the statute. But doesn't Cedrone really answer your issue there? I mean, if the Supreme Court can use that, we're supposed to say, no, you can't. It's a shorthand. It's a synonym that one could use, whether it's accurate, especially in a context where you're talking about imaginary activities, is something that makes it different from the usual case. Would you like to save time to respond? Yes, I would, of course. All right. Thank you. Good morning, Your Honors. May it please the Court. Brian Hostad for the United States. I wanted to turn first to the factual basis issue and respond to Judge Boehner's question. The case law seems to indicate that where there's a substantive violation of the Hobbs Act, there needs to be some sort of de minimis actual impact on commerce. Where there's a conspiracy involved, however, because the crime is the agreement rather than the completion of the offense, there only need be a potential impact. You had asked about various cases where this had been the case, where there had been Hobbs Act conspiracies or attempts that had been upheld on the basis of nonexistent commerce. And I wanted to call the Court's view. I think you put it very well, that where a conspiracy exists, there need only be a potential effect on commerce. Correct. How can nonexistent drugs have a potential effect on commerce? Well, the way that the Court, the cases have looked at this, and the circuits that have addressed this issue have looked at it, they have asked at the time the crime was committed, at the time the conspiracy was entered into, what did the defendant believe to be the crime that he was entering into engaging in? The Second Circuit did it in the Fabian decision that we cited. The Fourth Circuit did it in the Brantley decision that we cited. And the Seventh Circuit did it in the Bailey decision. In all of those cases, there were robberies of people either who were mistakenly believed to be drug dealers or who were, in fact, government agents posing as drug dealers. And even though those individuals were not engaged in the trafficking of drugs, the money that was taken from them or tried to be taken from them was nevertheless deemed to have the potential and requisite de minimis impact. But there was money. Here, there are no drugs. Right. But that money was not connected in any way with – I mean, that was just government buying money. It was not money that was actually part of the drug trade. And, in fact, in one of the cases – But it was printed in Washington and put in circulation, right? Ostensibly, that would be a broad category. But the government is not relying on that. And, in fact, the Seventh Circuit recently, I think, rejected that particular argument, the fact that money transfers. And we're not pressing that argument in this appeal. And, in fact, in the Fabian case, in the Second Circuit, the defendant in that case was trying to rob somebody he believed had moved money, drug money, from one State to another. There, in fact, was no money at all to be taken. And, nevertheless, the Court upheld the conviction. That's Fabian case. Fabian, yes, Your Honor. And in this case, you know, the government believes that in light of these particular standards, there was, in fact, a business that was the attempted – was the intended victim of this particular conspiracy. There were multiple stash houses that were used. The undercover agent was posing as a runner. The fact that there are multiple stash houses and that the quantity that was being And, in fact, if you look at the transcript that's included in the excerpt of record from the November 7th meeting with the defendant and the undercover agent, the – the – which I think is around excerpt of record 113, 112, 122, 127, and that area, the undercover agent talks about how he's been doing this for four years, how this is something that is regular and is usual, which indicates an ongoing activity. In the reply brief, the defendant argues that the fact that the drugs may have come into State and parked here for a few moments before they came into the hands of these drug dealers matters. I just wanted to call this Court's attention to the decision in Vitaglia, which we cite, which talks about the fact that the fact that an interstate or foreign journey ends does not mean that foreign commerce or that interstate commerce is not affected, and that that argument has been rejected by this Court in the past. Turning to the vagueness argument, just a few points in response both to the argument today and to the reply brief. In the reply brief, the defendant argues that it's not clear that the Hobbs Act reaches foreign commerce. Both by its plain terms and by case law interpretation, it does. The definition of commerce that's included in subsection B-3 refers to commerce that's between any point inside of a State and any point outside of a State, which would include both interstate commerce and foreign commerce. The last phrase of the definition of commerce, which refers to all commerce over which the United States has jurisdiction, has been interpreted by the Supreme Court and by this Court as reaching as far as the boundaries of the Commerce Clause allow. And the Commerce Clause plain language encompasses both foreign commerce and interstate commerce, and this Court's decision in Hannigan confirms that the Hobbs Act reaches foreign commerce. Which brings me to the response to the point that came up today about whether there's a limiting principle to the government's ability to invent crimes or create the opportunity for crimes for defendants to commit. And there is, and that is in fact the boundaries of the Commerce Clause itself. The last phrase talks about all commerce over which the United States has jurisdiction, and obviously the United States does not have jurisdiction beyond the boundaries of the Commerce Clause. That's in part why the Seventh Circuit in the Peterson decision that we cite found that where there was a Hobbs Act prosecution involving marijuana that had not been within the bounds of the Hobbs Act. It may still have been within the bounds of the Controlled Substances Act, but as for Hobbs Act jurisdiction, it is in fact bounded by the limits of the Commerce Clause. So this is a cocaine case? This is a cocaine case. What difference does that make? Well, the cocaine case, I mean, based on the fact that this is cocaine and the fact that the cocaine in this case was agreed to have come from out of State. Well, was it agreed to have come from out of State? Well, out of the country. It was imported. According to the factual basis, which I believe is an excerpt of Record 29 or 30. All that was agreed was that a government witness would testify that all cocaine came from out of the country. There wasn't a stipulation that it did or that it does. I'm not sure I follow the Court's, the distinction the Court's trying to draw. It says a government witness would testify. Correct. That's the stipulation. The stipulation isn't that cocaine is imported from outside the country. The stipulation is that a witness would testify. Did that witness ever testify? No. Was there a declaration to that effect? No, there was not. But the defendant in this particular case agreed to that factual basis, did not dispute that basis. It is an undisputed fact in the Record below that that's the case. And the Seventh Circuit in Marrero and all of the other decisions that we have cited in our brief that deal with cocaine didn't even refer to necessarily the fact that   And so there's no particular evidence about the cocaine. There were pleas involved in some of these cases as well. And in those particular cases, you know, the government believes that, you know, there's the sufficient record in this case and just the general principle that the cocaine comes from, that it is in fact imported, and that there's no dispute in this case. I mean, it's susceptible of judicial notice? I believe on the circumstances of this case, yes. Have you read the McCoy case? Yes, I have, Your Honor. Have you read our machine gun case? Yes, I have. Right. Yes. The Ninth Circuit seems to be taking a broad axe to the far end of the Commerce Clause. That would probably. This case seems to be at the far end of the Commerce Clause. I would argue that it is not at the far end of the Commerce Clause for a few reasons. The first is that Congress, when it enacted the Hobbs Act, and as the Supreme Court noted in its Colbert decision, noted that the Hobbs Act is getting at some forms of crimes that are traditionally – that are traditionally prosecuted by State and local authorities. And moreover, as all these kind of cases that are getting at and chopping away at the edges of the Commerce Clause are dealing, at least purported to be characterized dealing with non-economic, non-commercial activity, both the making of homemade machine guns, the use of marijuana that's homegrown for personal medicinal uses, they're not talking about commercial transactions, where in this case these people are narcotics traffickers, and, in fact, the defendants were intending to take that cocaine and sell it themselves. These were items that were in commerce and intended to continue to be in commerce in commercial transactions. So while the government is, you know, still in the process of addressing these other latest developments of the Ninth Circuit as to the Commerce Clause, this case does not implicate those because it is clearly – yes. Let's take a look at the language of the statute. Whoever in any way or degree obstructs, delays, or affects commerce – and now concentrate on this – or the movement of any article or commodity in commerce, doesn't that indicate that there has to be an article or a commodity? I believe – did the Court refer to an or that connected those two phrases? Yes. It can affect commerce or it has to affect an article or commodity in commerce. But doesn't it have to be either commerce, real commerce, or an article or commodity, a real article or commodity? I believe not, Your Honor, insofar as part of the crime as well is attempts or conspiracies to do so. And because the – But it's conspiracy to affect real commerce – I'm putting in the word real – or real article or real commodity in commerce. Shouldn't that be read that way? I don't believe so, Your Honor. Suppose that Congress had enacted a statute that said affects real or imagined commerce or real or imagined articles or real or imagined commodities. One would say, what are they doing in Washington? I think, though, that this particular language has been interpreted by other courts, both in the cases I cited initially, talking about, you know, beliefs where the defendant has an erroneous belief about what he's doing. Was it really $300,000 that the lady was being lifted? I don't believe so, but I haven't specifically read it for that particular fact. But I do know that this Court has long held that impossibility is not a defense to conspiracy, and particularly in the Hobbs Act cases, so that if, in fact, the Court's    And the fact is that the defendant is doing something that seems to be on a collision course with the Court's reading. And the Government would urge that the fact that because the crime that's here is conspiracy, the crime is in agreement, the defendant knew what it was he was agreeing to, and that crime is within the ambit of the Hobbs Act. How does the ATF get Hobbs Act jurisdiction on robberies like this? How does it? You mean, I would assume that because the, at least the law under the factual basis seems to indicate that, in evaluating factual bases, that you look at No, I'm just talking about the ATF. This was an ATF statement. Oh, I see what you're saying. How does the ATF investigate Hobbs Act robbery violations?  They may be, Your Honor. I'm not exactly sure how this particular operation was undertaken. All right. Thank you. What the ATF wanted to do was to get people to bring some guns to the site in order to get their jurisdiction. That's the answer to the question the Court was just asking. With respect to the conspiracy issue and the impossibility, I would like to follow up on one of the questions the Court brought out, and that is there has to be some reality underlying it. For example, in the context of an individual who was already dead and there was a conspiracy to murder that person, at least that person existed. Their life no longer existed, but there was something there that was real. Here we have absolutely nothing. We know, and I think the Circuit has been basing decisions on the Morrison decision, which is tightening the noose around the scope of what is interstate and foreign commerce. And clearly, if this Court were to rule other than the way I'm suggesting, it would be opening up a Pandora's box for all sorts of cases involving Hobbs Act violations and possibly other violations involving the interstate commerce powers that Congress has to create new and heretofore unimagined crimes. One thing that I would point out in looking at the Lynch decision real quickly is that, and I don't have too much time here, is that in the plea agreement, there is really no discussion of business, and yet in its opposition to the motion in the rest of judgment, the prosecution kept arguing and putting in the context that this was a business, these were things that happened and part of business. Actually, there's nothing that shows that there would ever have been interstate commerce. The factual basis is narcotics dealers, narcotics dealers, drug dealers, dealers, dealers, dealers, traffickers, traffickers. It's not a business? They're not saying the word business. When they start talking about it, though, in the briefs, it suddenly becomes a business and it morphs into something larger to try to attach to some underpinning of what might be deemed commerce, looking at the Lynch decision. Are you arguing that there was so little cocaine proposed to be dealt that it is de minimis and therefore does not affect interstate commerce? That argument could definitely be made, because How do you know if it's imagined, if it's universe or not? That's the problem. I mean, it could be this entire room could have been floor to ceiling in cocaine and that's what they were going to remove on a trailer truck. What's the evidence of how much cocaine was affected? Well, there was evidence to the effect it was supposed to be 25 kilograms. I believe that was set forth in the PSR, which was attached. It wasn't set forth in the plea agreement as to the quantity of cocaine. The position of 25 kilos is de minimis for purposes of affecting interstate commerce? In light of it was coming in from a foreign country, typically it would be coming in in much, much larger quantities than that. And this would be relative to the incident. Is there any evidence indicating that there's so much coming in that 25 is de minimis? Any evidence? Well. Or are you testifying? I can't testify. That's the problem. But looking at reports the government has about its seizures and their estimates, it appears to be that there is an awful lot of cocaine that's present in the country. Thank you, counsel. Thank you. The case just argued as ordered. Submitted. Is there a petition for writ of certiorari pending in McCoy? I do not know. I know that the government's petition for a rehearing was denied. I'm not sure whether or not wearing a processed cert petition is at this time. Thank you. We'll be in recess until tomorrow morning at 9 o'clock.
judges: Trott, Rawlinson, Bea